## IRA P. BACON *vs.* JOHN BOWDOIN & others.

A building was erected by A. on land of two tenants in common, by their oral permission that it should remain on the land while it should be used as a blacksmith's shop, and no longer :  A. sold the building to B. who did not use it as such shop, but removed it a few feet and repaired it, by oral permission of the owners of the land, and under an agreement with them that he would, within one year, buy the land on which the building stood, or after that time remove it on their request :  B. did not buy the land, nor was he requested to remove the building :  After the year had expired, one of the cotenants of the land sold the building to C. and took back a mortgage thereof :  C. afterwards leased the building to D. for ten years from a certain future day, with an agreement, which he performed, to enlarge the building and fit it for certain manufacturing purposes, before the day when the lessee was to take possession, and to furnish water, during the ten years, sufficient to drive the machinery in said building.   *Held*, that the building was attached to the land, by the sale thereof to C.; that C. leased it as real estate ; that the land on which it stood passed by the lease ; and that the lessee was entitled to redeem the mortgage thereof made by C. to his grantor, although that mortgage had been assigned, and C. had released his equity of redemption to the assignee.

Where one cotenant of land conveys a parcel thereof by metes and bounds, and takes back a mortgage and assigns it, the assignee, if he has no claim to the land under the other cotenant, cannot resist the right of the mortgagor's lessee for years to redeem that mortgage.

BILL in equity to redeem real estate in Belchertown, which was demised to the plaintiff by Joshua Shaw, after said Shaw

had mortgaged the same to Bowdoin, one of the defendants —
Bowdoin having assigned the mortgage to Town and Ferry, the
other defendants. The case was heard upon the bill and answer,
and a statement of facts agreed by the parties.

The *bill* alleged that Bowdoin, on the 22d of June 1836, con-
veyed to Joshua Shaw several tracts of land in Belchertown,
and a gristmill and the carding machines in the mill, and the
ground on which the gristmill then stood, and " one undivided
half of the mill yard," (setting forth the boundaries,) " with one
undivided half of the water power ; " and that Shaw, on the
same day, mortgaged the same premises to Bowdoin, to secure
promissory notes and sums of money which he owed to Bow-
doin : That said Shaw, on the 14th of July 1837, by inden-
ture, * which was duly recorded, demised to the plaintiff a
certain building and the land on which it stood, and still stands,

---

* This indenture was as follows : " Articles of agreement indented, made and
concluded this 14th day of July 1837, by and between Joshua Shaw of Belcher-
town, of the first part, and Ira P. Bacon of said Belchertown, of the second part
witness : First, the said Joshua hereby agrees and covenants with the said Ira P.
to complete a building now erected and standing southerly and near the gristmill
of the said Shaw, in said Belchertown, and about twenty-five feet therefrom,
with first, second and attic story in the roof. Said building is to be made tight
and warm, and suitably lighted for the manufacture of cotton into batting, wad-
ding, wicking and coarse yarn, or any kind of manufactory. Said Shaw is to
furnish a suitable waterwheel for said building, to carry the machinery for the
purposes aforesaid, and water sufficient to drive said wheel with sufficient force
to carry all the machinery of the said Bacon at all times, and to furnish a shaft
in each of the lower stories, in length nearly equal to that of the building, of suf-
ficient size to drive the machinery, with suitable drums on them. And also
about six small drums, beside those on the line shafts, and to furnish the main
belt from the waterwheel to the main shaft. Said Shaw is to put said machinery
in good repair, and keep it in good repair for the space of one month : Also
a shed suitably near the aforesaid building, twenty by fifteen feet on the
ground, for storing cotton and other goods : Also a road from the highway to
said building, kept in suitable repair, with liberty to pass and repass thereon
at all times. All the buildings are to be kept in repair by said Shaw ; and the
buildings are to be suitably furnished with the aforesaid machinery by the first
day of September next, ready for operation by the first day of September next.

And if said Shaw shall fail to have said buildings, machinery, and all which he
is to furnish, ready for operation at the time aforesaid, he shall pay said Bacon as
liquidated damages during the time he shall fail to have all ready for operation,
the sum of five dollars by the day. And said Shaw does hereby lease said build-
ing to said Bacon for the term of ten years from the said first day of September,

with water power, &c. for the term of ten years from the 1st of September 1837 — said demised premises being part of the estate which Shaw, before said demise, had mortgaged to Bowdoin ; and the plaintiff, not knowing, at the time of the demise, that the demised premises were so mortgaged : That the plaintiff entered into possession, under said demise, and continued in possession until interrupted as hereinafter set forth : That the plaintiff, on the 19th of October 1838, conveyed his interest in said demised premises to Homer Bartlett, in mortgage, to secure to him the sum of $ 500, and that Bartlett, on the 25th of April 1840, released his right under said mortgage to the plaintiff, who has ever since had all the rights conveyed to him by the indenture aforesaid, executed by J. Shaw. That on the 23d of May 1839, Bowdoin conveyed to Town & Ferry, the other defendants, all his right in the premises mortgaged to him by Shaw, and that Shaw, on the same day, released to them all his right therein ; they having, at the time, knowledge of the demise from Shaw to the plaintiff : That said Town & Ferry, on the same 23d of May, mortgaged said premises to Bowdoin, to secure (*inter alia*) the money before secured by the mortgage made to Bowdoin by Shaw : That Shaw, on the 24th of May 1839, indorsed on said last mentioned mortgage a certificate that Town & Ferry, on that day, and with said Shaw's consent, entered upon and took possession of the mortgaged premises, for condi-

---

for the sum of fifty-five dollars by the year, to be paid annually. But said Bacon is to have the use of said buildings &c. after they are completed, free of rent for so long a time as shall intervene between the first day of June last and the time when said buildings, machinery, &c. shall be ready for operation ; and shall also use said building free of rent, for the purposes of storing cotton and machinery, and making repairs, from the date of this instrument. And said Shaw is to pay all taxes on the real estate. And the said Ira P. doth agree, and by these presents doth covenant with the said Shaw, to take the aforesaid buildings, machinery, &c. with the appurtenances, for the space of ten years from the said first day of September, on the terms aforesaid, and to pay the rents at the rate of fifty-five dollars by the year as aforesaid ; and to keep the running part of the mill in repair after the expiration of one month as aforesaid. And whatever said Bacon shall put on he shall have a right to take off." (Signed and sealed by the parties.)

This instrument was held, at a former term, to be a present demise to commence *in futuro*, and not merely an agreement for a lease. 22 Pick. 401.

tion broken; which certificate was, within the next thirty days, recorded in the registry of deeds. The bill further averred, that the three defendants deny the plaintiff's right to redeem the mortgage made by Shaw to Bowdoin, and threaten to eject him from the premises demised to him by Shaw, and have deprived him of the use of the water power, &c. — wherefore he prayed that the defendants might be ordered to render an account of the sum justly due on said mortgage, (the plaintiff having demanded such account, and the defendants having refused it,) and that, upon payment of such sum by the plaintiff, the defendants, or some of them, might be directed to transfer said mortgage, &c. to him. A prayer was added for other and further relief.

The *answer* stated that the building, mentioned in the bill, was on the land which, in the conveyance by Shaw to Bowdoin, is described as the mill yard, one undivided half of which passed by said conveyance : That said building was originally erected for a blacksmith's shop, in 1824 or 1825, by Elijah Billings, under an oral permission of Bowdoin and of David Lewis, (who owned the mill yard in equal moieties,) on condition that it should remain there while used as such shop, and no longer : That Billings used the shop for some time, and then sold it, as personal property, to Porter Bridgman, who occupied it till 1831, and then sold it as personal property to Enoch Shaw, who did not use it as a shop, and who, soon after he bought it, was informed by Bowdoin of the condition upon which it was erected : That an oral agreement was soon afterwards made between said Enoch and said Bowdoin & Lewis, that said Enoch should remove the building a few feet, repair it, and procure a blacksmith to work in it constantly, and should, within a year, buy the land on which it should stand, and pay $100 therefor, or should remove the shop, when requested so to do by Bowdoin & Lewis : That said Enoch removed the shop accordingly, but never put a blacksmith into it, nor paid for the land ; that he always regarded the shop as personal property, and that neither he, nor Bridgman, nor Billings, had any right in the water power, or title to the land : That said Enoch, by his deed of January 25th 1833, duly acknowledged, mortgaged the shop, with the appurtenances

and privileges thereto belonging, to Calvin White, junior, to se-
cure payment of $ 184·35, within one year ; which mortgage
was recorded in the registry of deeds, and is still in force : That
he afterwards, by an instrument not acknowledged, nor under
seal, dated March 10th 1834, mortgaged the same shop, as per
sonal property, to Ephraim Richards, to secure payment ol
$ 275 in three months ; and this last mortgage was recorded in
the office of the clerk of Belchertown, on the 15th of said March,
and was assigned by Richards, on the 23d of August 1836, to
Joshua Shaw beforenamed, and the assignment was also re-
corded in the said clerk's office.

The defendants alleged that all the foregoing facts, set forth
in their answer, were known to the plaintiff when the articles of
agreement between him and said Joshua Shaw, contained in the
aforesaid indenture, were made ; and that it never was under-
stood nor intended between them that said Joshua should lease,
or had leased, to the plaintiff any greater right in said building,
than that which said Joshua acquired by virtue of said Enoch
Shaw's mortgage to Richards, and Richards's assignment thereof
to said Joshua ; and that it was never understood nor intended
that any greater right, than as aforesaid, should pass by said
Joshua's aforementioned mortgage to Bowdoin. The defend-
ants further alleged, that if said building, as removed and re-
paired by Enoch Shaw, is real estate, then the right and title
thereto, when the plaintiff's bill was filed, were in said Enoch
and said White, mortgagor and mortgagee thereof, as aforesaid —
the subsequent mortgage thereof to Richards, as personal prop-
erty, being insufficient to convey any right or title thereto, or n
terest therein.

The answer admitted the conveyances, &c. set forth in the
bill, but denied that any water power or privilege was connected
with or appurtenant to said building, or that there was any way
of conveying water thereto, at the time when the indenture afore-
mentioned was executed by Joshua Shaw and the plaintiff.

The defendants denied that they had threatened to eject the
plaintiff, or that they intended to disturb him in the enjoyment of
any right to which he was entitled, when his bill was filed, in

any building or water power leased to him by Joshua Shaw in and by the indenture before mentioned. They also averred that Town & Ferry had rendered to the plaintiff a just and true account of the sum due on the mortgage which the plaintiff seeks to redeem, and of the rents and profits of the premises conveyed by said mortgage, and of taxes, repairs, &c.

The following *facts* were agreed by the parties : The building claimed by the plaintiff, as leased to him by Joshua Shaw, is situated on the land described as " the mill yard " in the deed from Bowdoin to Joshua Shaw, and in the mortgage from Shaw to Bowdoin ; and neither Bowdoin nor Shaw ever had any right to the land, except to one half in common and undivided. The other half, when the blacksmith's shop was erected, was owned by David Lewis, and when the indenture between said Shaw and the plaintiff, was made, said other half was owned by Emilius Bond. In 1837, the building mentioned in said indenture, and concerning which the facts are stated in the defendants' answer, was 30 feet long and 26 feet wide ; and the said Joshua Shaw, during that year, made an addition thereto of " about 20 feet one way and 26 feet the other."

A small part only of the sum, for which the mortgage above mentioned was made to Calvin White, Jr. has been paid, and the plaintiff has never paid any rent to the defendants, or either of them. The debt due to Ephraim Richards, which the other mortgage abovementioned was intended to secure, was not paid when that mortgage was assigned to Joshua Shaw.

In 1837, there was a water-wheel in that part of the building, mentioned in the aforesaid indenture, which was a blacksmith's shop, and the same had been driven by water from the gristmill floom. Part of that floom had been carried away by a freshet, and Joshua Shaw removed the old water-wheel, and put a new one in its place, on a new floom, made by him before the month of August in that year, and which drew water from the mill pond on the premises that were mortgaged by him to Bowdoin, on the 22d of June 1836, as mentioned in the plaintiff's bill. The wheel and floom were made by said Shaw in pursuance of the aforesaid indenture. The old wheel had been used

by Enoch Shaw to drive a turning lathe ; but he had no right to any water power, and used the water only by permission of Bowdoin & Lewis, and never paid them any rent therefor.

The several conveyances, mentioned in the bill and answer, were to be taken as proved. Also the plaintiff's demand of an account, and the account thereupon rendered to him by Town & Ferry ; but the plaintiff did not admit the correctness of that account.

*Forbes*, for the plaintiff.

*Wells & Bowdoin*, for the defendants.

WILDE, J. This case came on to be heard on the bill and answer, and on an agreed statement of facts, many of which, according to the view we have taken of the law and equity of the case, are wholly immaterial.

The principal question on which the decision of the case depends is, whether the property, demised by Shaw to the plaintiff, was real or personal estate. This question and several others, not now contested, have been determined at a former hearing, on demurrer to the bill. 22 Pick. 401. But the defendants' counsel now contend, that upon the facts agreed a different decision is required.

It is now agreed by the parties, that the building leased to the plaintiff was first erected by one Billings, he having no title to the land on which it was erected, and that the same was erected with the permission of Bowdoin, one of the defendants, and one Lewis, who were the owners of the land, to be used by Billings as a blacksmith's shop. That this shop was by sundry conveyances finally sold to Joshua Shaw, the plaintiff's lessor, as personal property. And from these facts, it is inferred by the defendants' counsel, that the said Shaw so leased it to the plaintiff. But we are of the opinion that this inference cannot be sustained, and that the lease cannot be so construed. By the conveyance of the building to Shaw, it became attached to the real estate. A large addition was made to it by him, before he leased it to the plaintiff. The building was not then completed ; but Shaw in the lease covenanted to complete the same, and to complete it in such a manner as to render it suitable for the manufacturing

of cotton and other articles, and that he would put in a water-wheel and machinery suitable for this purpose. In pursuance of this covenant and agreement, Shaw put a new water-wheel into said building, and erected a new floom before the time limited for the commencement of the lease.

Considering these facts, in connexion with the terms of the plaintiff's lease, we have no doubt that he has acquired a good title to the land on which the factory stands, so far as the occupation of it is necessary, during the continuance of the lease.

By the grant or lease of a house or any other building, the land on which it stands, with the privileges necessary to its enjoyment, passes by implication, unless the implication is rebutted by the language of the deed. 22 Pick. 401. *Blake* v. *Clark*, 6 Greenl. 439. In the present case, it abundantly appears that the building leased was to be occupied as a factory, the machinery in which was to be worked by a water power, sufficient for the purpose, which the lessor, by the lease, agreed to furnish. We are therefore clearly of opinion that the property leased to the plaintiff was real estate. It is no objection that the building was purchased by Shaw as personal property ; for by the purchase, Shaw being the owner of the land on which the building stood, it thereby became attached to and a part of the realty, as effectually as if it had been built there by Shaw, or as if he had purchased it and moved it upon his land from another place.

There is but one other objection to the plaintiff's title, upon which we deem it necessary to make a remark. It is objected that Shaw held the premises, with other real estate, in common with Lewis, and that his conveyance of a part of the common property, by metes and bounds, is void.

It is very clear, however, that this objection is not well founded. The conveyance is valid against Shaw and all persons claiming under him. It can be avoided by Lewis ; but neither of the defendants has shown any title under him.

*Referred to a master, to take an account of the sum due on the mortgage, and of the rents and profits.*